UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X     Docket No.:
QIAN LI,

                                 Plaintiff,

                    -against-                                    **COMPLAINT**

SPARK    THERAPEUTICS,    INC.,    SAVINA
JAEGER and JOHN and JANE DOE (said names
being fictitious, the persons intended being those
who aided and abetted the unlawful conduct of the     **JURY TRIAL**
named Defendants),                                     **REQUESTED**

                                 Defendants.
----------------------------------------------------------X

       Plaintiff, **QIAN LI** ("Li" or "Plaintiff"), by her attorneys, **MADUEGBUNA COOPER LLP**, for her complaint alleges:

### I.       THE NATURE OF THIS ACTION

       1.     This is an action for declaratory judgment and money damages to remedy discrimination and retaliation on the basis of disability, race, ancestry and national origin, in the terms, conditions, and privileges of employment under the Americans with Disabilities Act of 1990, § 2, *et seq.*, 42 U.S.C.A. § 12101, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* ("Title VII"); 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Section 1981"); and the New York State Human Rights Law as contained in New York State Executive Law, § 296, *et seq.* ("NYSHRL").

       2.     Li contends that the terms, conditions, and privileges of her employment relationship with Defendant SPARK THERAPEUTICS, INC. ("SPARK") were adversely

affected because of her disability, race, ancestry and national origin, by the conduct of her white supervisor Defendant SAVINA JAEGER ("JAEGER") and SPARK.

3.    Specifically, Li, a highly educated and accomplished research scientist and biostatistician of Chinese descent, was discriminated against when she was bullied and harassed; unjustifiably given false criticisms of her work, with vague and cryptic comments about supposed mistakes in her work and set up to fail by withholding necessary data and other information needed to complete assignments, by JAEGER.

4.    To make matters worse, shortly after SPARK hired additional biostatisticians of non-Chinese national origin or ancestry, Li was suddenly being told by JAEGER that her English-speaking skills were lacking and her marked Chinese accent when speaking English was making communications difficult with other employees of SPARK and project stakeholders.

5.    Li's English-speaking skills and her marked Chinese accent when speaking English were well known to JAEGER and SPARK when Li was conveniently hired, at a time SPARK was experiencing a staffing shortage of biostatisticians.

6.    Indeed, until SPARK hired additional biostatisticians of non-Chinese national origin or ancestry, Li's marked Chinese accent when speaking English had never been an issue and did not make difficult her communications with any other employee or SPARK project stakeholders.

7.    As a result of JAEGER's bullying, harassment, race and ancestry discrimination, Li became emotionally distressed and was diagnosed with depression, anxiety and posttraumatic stress disorder, conditions that forced her to take short-term disability leave.

8.     To address her disability and avoid further maltreatment by JAEGER, Li requested reasonable accommodation in the form of transfer to a new supervisor or the ability to communicate only in writing with JAEGER, but her request was outright ignored.

9.     Li also complained to SPARK human resources that JAEGER was "purposefully" attacking her and trying to force her to quit by making her work "unbearable" and that after returning from short-term disability leave, JAEGER's treatment of her got worse.

10.    Two days after her complaint, rather than addressing Li's accommodation request and complaints, SPARK human resources unlawfully and unjustifiably terminated her employment.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

12.    This Court has supplemental jurisdiction over the state causes of action pleaded.

13.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## III.    PROCEDURAL REQUIREMENTS

14.    On May 30, 2024, charges of discrimination were filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII and the ADA.

15.    The EEOC issued a Right to Sue Notice to Plaintiff on July 18, 2024, which Plaintiff received on July 18, 2024.

16.    This lawsuit is brought within 90 days of Plaintiff receiving the Right to Sue Notice.

## IV.    **PARTIES**

17.    Li is a 48-year-old Asian female of Chinese descent who speaks with a marked Chinese accent.

18.    Li is a resident of the County of Westchester and State of New York, residing in Hastings-on-Hudson.

19.    SPARK is a foreign corporation organized and existing under the laws of the State of Delaware, and its corporate headquarters is located at 3737 Market Street, Philadelphia, Pennsylvania 19104.

20.    SPARK is authorized to do business under the laws of the State of New York.

21.    At all relevant times, Defendant JAEGER was (and is) the Head of Biostatistics at SPARK.

22.    From May to November 2023, JAEGER was Li's manager and immediate supervisor.

23.    JAEGER is a white female.

24.    Upon information and belief, JAEGER is non-disabled.

25.    JAEGER is sued here both in her personal and official capacities.

26.    At all relevant times, JAEGER had authority to assign duties and responsibilities to employees; supervised and controlled employee work schedules and conditions of employment and possessed authority to promote, demote, and terminate employees.

27.    At all relevant times, JAEGER was also responsible for and made personnel decisions affecting employees.

28.    At all relevant times, JAEGER was responsible for ensuring that employees are not subjected to discriminatory or retaliatory practices.

29.    Defendants conspired and/or aided and abetted each other in unlawful employment practices and did so in callous disregard of Plaintiff's rights.

## V.    FACTS COMMON TO ALL CAUSES OF ACTION

*Li's Background and Experience*:

30.    Li holds a Doctor of Philosophy in Epidemiology and Biostatistics from TongJi Medical College of Huazhong University of Science and Technology in Wuhan, China.

31.    From July 2005 to January 2008, Li worked as an Assistant Professor in the Department of Social Medicine in TongJi School of Public Health, Huazhong University of Science and Technology in Wuhan, China.

32.    From January to November 2008, Li was a Visiting Research Scientist at Kanazawa Medical University in Ishikawa, Japan.

33.    Li then became a Postdoctoral Fellow at the International Agency for Research on Cancer in Lyon, France, from November 2008 to December 2010, and worked on multiple research projects concerning lung and head and neck cancers.

34.    From December 2010 to January 2012, Li was an Associate Professor at the National Cancer Institute/Hospital, Chinese Academy of Medical Sciences in Beijing, where she worked on an international multicenter case-control study to investigate environmental and genetic risk factors of head and neck cancer, and a hospital case-control study on lifestyle factors of breast cancer.

35.    In January 2012, Li moved to the United States and worked as a Visiting Professor in the Yale School of Public Health, researching Hodgkin's and non-Hodgkin's lymphoma, and breast cancer.

36.    In January 2013, Li took a position as an Assistant Scientist with the Icahn School of Medicine at Mt. Sinai, working on studies involving environmental exposures and fetal research.

37.    Between January 2013 to October 2022, Li was promoted to the positions of Associate Scientist and then Senior Scientist.

38.    In October 2022, Li became a Biostatistician & Data Analyst with the Hospital for Special Surgery.

39.    On February 24, 2023, Li was hired as a part-time contract worker with SPARK.

40.    In May 2023, Li was hired by SPARK on a full-time basis as a Senior Statistician, working on gene therapies in the Department of Biometrics, Biometrics & Real World Evidence division.

41.    At all material times, JAEGER and SPARK knew, and were aware, of Li's English-speaking skills and her marked Chinese accent when speaking English.

_Li Begins Successfully Working for SPARK Full-Time_:

42.    In May 2013, when Li was hired full-time, SPARK was experiencing a staffing shortage of biostatisticians.

43.    At the time of Li's full-time hire, SPARK and JAEGER knew that Li did not have experience in the industry side of biostatistics.

44.     In fact, at that time, JAEGER assured Li that she would be trained, and that JAEGER would help her, as she too had come from academia and understood the transition.

45.     JAEGER also told Li that the position was stable, as SPARK did not want to change the assigned biostatistician while a study or project was ongoing.

46.     Although Li had experience in the academic side of biostatistics, she completed the first data study assigned to her and received positive feedback and encouragement from JAEGER.

47.     In her July 2023 mid-year review, Li received positive feedback, including that she had "made very important contributions on multiple projects and deliverables" and "built very good relationships within the team and also cross-functionally, and her collaborators have expressed positive feedback about her work."

*JAEGER Unfairly and Falsely Criticizes Li's Work*:

48.     However, the second study Li was assigned at the end of June was very complicated and involved complex datasets, which JAEGER admitted she herself did not even have experience with. As such, JAEGER asked an experienced contract biostatistician to assist Li.

49.     At around the same time, in July 2023, JAEGER hired two additional full-time senior biostatisticians of non-Chinese ancestry or national origin.

50.     In or around August 2023, after JAEGER hired the two additional senior biostatisticians of non-Chinese ancestry or national origin, JAEGER began to falsely tell Li about alleged negative feedback from project stakeholders.

51.    But when Li contacted a key stakeholder for more information about the negative feedback, the stakeholder reported that he had recently conveyed to JAEGER that Li's work was "quite helpful."

52.    The stakeholder also reported to Li that:

> "We are collaborating on several complex datasets, which were not originally designed for some of the analyses being requested of us, and as a result you had to learn a lot of material very quickly. I really appreciate your efforts on this."

53.    JAEGER also falsely told Li that other biostatisticians were supposedly finding "errors" in her work, but when Li asked for specifics, she did not receive any verifiable details.

54.    Li continued to be berated with vague and cryptic comments from JAEGER about supposed mistakes in her work, and when Li asked for more information about the so-called errors, JAEGER said that Li should be able to figure them out herself.

55.    One of Li's colleagues, another Senior Biostatistician, even suggested that Li leave SPARK to get away from JAEGER's mistreatment, that it was unfair to Li and that Li did not deserve such treatment.

56.    In addition, JAEGER suddenly began to accuse Li of "being unable to communicate orally" and that Li had a "problem with [her] speech."

57.    This accusation was even though JAEGER had been aware from the beginning of Li's relationship with SPARK, of Li's marked Chinese accent and pattern of speech, which had never been an issue and did not make communication difficult with any employee or stakeholder.

58.    Li was offended by the discriminatory comments and caught off guard, but to maintain her employment, assured JAEGER that she would improve her communications in the next couple of months.

59.    In response, JAEGER, insultingly asked Li how given the length of her residence in the United States, she hoped to improve her English-speaking skills, stating, in sum and substance:

> "You can't improve your English in the last twelve years, how can
> you improve it in the next couple of months?"

*Li Takes Short-Term Disability Leave*:

60.    Because of JAEGER's bullying and harassment, on September 16, 2023, Li was diagnosed by her psychiatrist, Dr. Jing Xu, with major depression, anxiety and post-traumatic stress disorder.

61.    As a result of the diagnoses and conditions caused by JAEGER's bullying and harassment, Li had to take short-term disability leave from September 19 to November 2, 2023.

62.    Specifically, because of JAEGER's bullying and harassment, Li struggled with insomnia that required prescription medication, decreased appetite and concentration, heart palpitations and increased fearfulness and worry.

63.    In her October 2, 2023 report, Dr. Xu also noted that Li was not in a "good mental state" and recommended that she work with a different supervisor and be placed in a more supportive environment.

64.    On November 1, 2023, Li requested a meeting with SPARK Human Resources and told Human Resources based on the report of Dr. Xu and recommended that she work with a different supervisor. But Human Resources rejected this request and kept her under JAEGER's supervision until Li's unlawful termination about two weeks later.

65.    As soon as Li returned to work, on November 3, 2023, JAEGER scheduled a Zoom meeting to review her past claims of errors in Li's work and asked Li if she agreed with the alleged errors.

66.    When Li disagreed and once more asked for documentation, JAEGER falsely claimed that she had already documented the mistakes in emails.

67.    When on November 6, 2023, JAEGER assigned Li an unclear assignment, she refused to provide Li with the protocols and dataset needed and told Li to figure it out herself.

68.    The assignment was so unclear that JAEGER's supervisor (Vice President and Head of Biometrics and Real-World Evidence,) even reviewed the assignment with Li but could not figure it out and suggested that Li ask JAEGER.

69.    However, when Li asked JAEGER for clarification, JAEGER provided only a vague response and refused to put that response in writing.

70.    On November 14, 2023, Li submitted the report of Dr. Xu and recommended that she work with a different supervisor.

71.    SPARK failed and refused to grant Li the recommended reasonable accommodation without any reasonable explanation, and Li remained under the supervision of JAEGER until Li's employment was terminated on November 16, 2023.

*Li's Disabilities*:

72.    On account of the discrimination, she was facing at work at SPARK, Li was diagnosed with major depression, anxiety and posttraumatic stress disorder.

73.    At all times relevant and to the knowledge of Defendants, these mental health diagnoses affected Li's ability to work at SPARK and under JAEGER.

74.    Despite Li's disabilities, she excelled at work and, at all relevant times, was able to perform the duties and functions of her position with SPARK.

75.    At all relevant times, Li was regarded as disabled by Defendants.

76.    Defendants are also on notice of Li's disabilities, since at least October 2, 2023, when her psychiatrist, Dr. Xu, recommended she be reasonably accommodated on account of her disabilities.

77.    At SPARK, despite her disabilities, Li effectively discharged her assigned duties, earning a highly positive mid-year performance review.

*Li Requests a Reasonable Accommodation*:

78.    On November 14, 2023, Li sent a letter to Human Resources, requesting a reasonable accommodation "to allow [her] to perform the essential functions of [her] work."

79.    Specifically, Li requested reasonable accommodation in the form of a change of supervisor or alternative methods of supervision if she could not change supervisors, such as:

      a.    eliminating face-to-face communication and proceeding through written communications only and/or

      b.    reporting directly to another senior-level biostatistician who could then report to JAEGER.

80.    Li complained to SPARK human resources that it "had been the sudden change of interaction" with JAEGER that triggered her symptoms, "such that interacting with her severely hamper[ed] [Li's] ability to work and [her] psychological state."

81.    Li also complained that JAEGER was "purposefully" attacking her and trying to force her to quit by making Li's work "unbearable."

82.     Li further advised that after returning from short-term disability leave, JAEGER's treatment was worse than before.

*Li's Employment is Unlawfully Terminated Due to her Disability, Race and Ancestry*:

83.     Two days later, on November 16, Human Resources contacted Li, allegedly to discuss her accommodation request, but instead terminated her employment.

84.     After Li received the severance agreement, she attempted to negotiate for additional severance but SPARK outrightly denied her requests.

85.     To date and in bad faith, SPARK has failed to respond to Li's continued attempts to further negotiate.

*Defendants' Actions Continue to Cause Li Significant Loss and Damage*:

86.     As a proximate result of Defendants' discriminatory conduct towards Li, she suffered monetary loss and damages, including the loss of past and future earnings and other employment benefits.

87.     As a further proximate result of Defendants' actions, Li has suffered emotional distress, lasting embarrassment, humiliation, and anguish, as well as other incidental and consequential damages and expenses.

88.     The defendants' conduct was outrageous and malicious, intended to injure Li and carried out with reckless indifference to Li's protected civil rights, thereby entitling her to punitive damages.

89.     Li has no complete, plain, clear or adequate remedy at law.

## FIRST COUNT AGAINST DEFENDANT SPARK
### (Disability Discrimination in Violation of the ADA)

90.     Li repeats and realleges each allegation in each paragraph above.

- 12 -

91.     The ADA prohibits discrimination in employment against people with disabilities, including failing to make reasonable accommodations for the known mental and physiological limitations of an otherwise qualified employee.

92.     Li is a disabled individual within the meaning of the ADA.

93.     Li was well-qualified for her position at SPARK.

94.     Li was terminated as a result of discriminatory animus based on her disability.

95.     As set forth above, at all relevant times, SPARK and JAEGER regarded Li as a person with multiple disabilities.

96.     Li's multiple disabilities of depression, anxiety and post-traumatic stress disorder affected Li's abilities to perform activities of daily living such as maintaining self-care, work, school and relationships.

97.     Li's depression caused her fatigue, loss of appetite and sleep problems.

98.     Li's anxiety led her to social isolation and made it difficult for her to be productive at work due to having trouble concentrating, remembering details or making decisions.

99.     Li's post-traumatic stress disorder also caused her fatigue, loss of appetite and sleep problems and made it difficult for Li to maintain relationships with family and friends.

100.     Rather than make reasonable accommodations for the known physiological limitations of Li, SPARK discriminated and retaliated against her as described above.

101.     By reason of the foregoing, Li has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SECOND COUNT AGAINST DEFENDANT SPARK**
**(Disability Discrimination in Violation of the Rehabilitation Act)**

102.     Li repeats and realleges each allegation in each paragraph above.

103.     The Rehabilitation Act prohibits discrimination in employment against people with disabilities, including actual and perceived disabilities.

104.     SPARK has contracts with the federal government and receives federal funding.

105.     SPARK is subject to the Rehabilitation Act.

106.     Li is a disabled individual within the meaning of the Rehabilitation Act.

107.     Li was well-qualified for her position.

108.     Because of her disability, Li was discriminated against by being:

    a.   Denied reasonable accommodation in October 2023, in the form of working with a different supervisor and being placed in a more supportive environment;

    b.   Refused protocols and dataset needed to complete an assignment and told to figure it out on her own;

    c.   Denied reasonable accommodation in November 2023, in the form of a change of supervisor, alternative methods of supervision if she could not change supervisors and/or reporting directly to another senior-level biostatistician who could then report to JAEGER and

    d.   Terminated from her employment on November 16, 2023.

109.     By reason of the foregoing, Li has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## THIRD COUNT AGAINST DEFENDANT SPARK
### (Race, Ancestry and National Origin Discrimination in Violation of Title VII)

110.     Li repeats and realleges each allegation in each paragraph above.

111.   SPARK subjected Li to differential terms and conditions of employment because of her race, ancestry and national origin.

112.   These differential terms and conditions of employment include but are not limited to:

   a.   Excessive and unwarranted criticism of Li's work;

   b.   Falsely accusing Li of making errors and refusing to give her an opportunity to correct any alleged errors;

   c.   Accusing Li of being unable to communicate on account of her Chinese accent and pattern of speech;

   d.   Telling Li she had failed to improve her English in the twelve years she had been living in the United States and would not be able to improve it in two months and

   e.   Terminating Li's employment.

113.    All the above actions were taken by SPARK in order to deprive Li of employment and other contractual opportunities on account of her race, ancestry and national origin.

114.   Because of the willful and deliberate actions of SPARK, and as a proximate cause thereof, Li has been denied her right to equal employment opportunity in violation of Title VII.

115.   By reason of the foregoing, Li has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

<u>**FOURTH COUNT AGAINST ALL DEFENDANTS**</u>
**(Race and Ancestry Discrimination under Section 1981)**

116.   Li repeats and realleges each allegation in each numbered paragraph above.

- 15 -

117. Defendants subjected Li to differential terms and conditions of employment because of her race and ancestry.

118. Specifically, Defendants subjected Li to the following adverse actions because of her race and ancestry:

  a. Excessive and unwarranted criticism of Li's work;

  b. Falsely accusing Li of making errors and refusing to give her an opportunity to correct any alleged errors;

  c. Accusing Li of being unable to communicate on account of her Chinese accent and pattern of speech;

  d. Telling Li she had failed to improve her English in the twelve years she had been living in the United States and would not be able to improve it in two months and

  e. Terminating Li's employment.

119. Defendants took the foregoing actions to deprive Li of equal employment opportunities and other contractual opportunities on account of her race and ancestry.

120. Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Li has been denied her right to equal employment opportunity in violation of Section 1981.

121. By reason of the foregoing, Li has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## FIFTH COUNT AGAINST ALL DEFENDANTS
**(Disability, Race, Ancestry National Origin Discrimination in violation of the NYSHRL)**

122. Li repeats and realleges each allegation in each paragraph above.

- 16 -

123.    At all relevant times, Li was an "employee" within the meaning of the NYSHRL.

124.    By adversely affecting the terms, conditions and privileges of Li's employment because of her disability, race and ancestry, Defendants violated the NYSHRL.

125.    By reason of the foregoing, Li has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**PUNITIVE DAMAGES**

126.    Li claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the defendants.

**WHEREFORE,** Li prays that this Court grant her judgment containing the following relief:

    a.    Impanel a jury to hear Li's claims;

    b.    An award of damages in an amount to be determined upon the trial of this matter to compensate Li for her monetary loss and damages, including Li's loss of past and future earnings, bonuses, compensation, and other employment benefits;

    c.    An award of damages to compensate Li for mental anguish, humiliation, embarrassment and emotional injury for each cause of action;

    d.    An award of damages in an amount to be determined upon the trial of this matter to compensate Li for violations of her rights under the ADA, the Rehabilitation Act, Title VII, Section 1981, and the NYSHRL;

    e.    An award of punitive damages to be determined at the time of trial for the claims under the ADA, Title VII, Section 1981, and the NYSHRL;

f.      An award of reasonable attorneys' fees and costs related to Li's claims under the

ADA, the Rehabilitation Act, Title VII, Section 1981, and the NYSHRL; and

g.      Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 2, 2024

Respectfully Submitted,

_____
SAMUEL O. MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff QIAN LI
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155

TO:    Defendants

      SPARK THERAPEUTICS, INC.
      c/o Corporation Service Company
      251 Little Falls Drive
      Wilmington, Delaware 19808

      SAVINA JAEGER
      c/o SPARK Therapeutics, Inc.
      3737 Market Street
      Philadelphia, Pennsylvania 19104

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*

-------------------------------------------------------------------------------------------------------------

*QIAN LI,*

*Plaintiff,*

*-against-*

*SPARK THERAPEUTICS, INC., SAVINA JAEGER and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),*

*Defendants.*

-------------------------------------------------------------------------------------------------------------

*COMPLAINT AND JURY DEMAND*

-------------------------------------------------------------------------------------------------------------

*Signature (Rule 130-1.1-a)*

_____

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

_____

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Li*
*30 Wall Street, 8th Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*

*Service of the within is hereby admitted on*

_____

*Attorneys for*